Prudential Insurance Company of America, Complainant and Appellee, v. Gertrude Ostrom et al., Defendants.
Appeal of Charles R. Kunz, Appellant.

Gen. No. 36,760.

Heard in the second division of this court for the first district at the June term, 1933. Reversed and remanded with directions. Opinion filed March 6, 1934.

MICHAEL W. KAVENEY and THOMAS P. QUINN, for appellant.

No appearance for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

In an interpleader cause, commenced by the filing of complainant's bill in the circuit court of Cook county on October 14, 1931, such proceedings thereafter were had as resulted in the court on February 15, 1933, entering a final decree in complainant's favor, from which Charles R. Kunz prosecutes the present appeal. No appearance and no brief have here been filed by appellee (complainant).

In the preamble of the decree it is stated that the cause came on to be heard upon complainant's bill, the answers of Charles R. Kunz and Edward J. Grunska, the report of the master to whom the cause was referred, the evidence heard before him, and the exceptions of said Kunz to said report, "which exceptions are hereby overruled." And it is further stated that the court, having considered the pleadings, the master's report and the evidence filed therewith, and having heard arguments of counsel, "DOTH FIND" (substantially as follows):

1. That the court has jurisdiction of the subject matter and of the parties.

2. That complainant, a New Jersey corporation, issued and delivered four policies of insurance upon the life of Benjamin H. Ostrom (numbers of policies stated).

3. That said Ostrom departed this life, and Gertrude Ostrom, his wife, ·the beneficiary named in the policies, made claim for the proceeds.

4. That in the regular course of its business, on August 25, 1931, complainant issued its check for $1,424.27, and on that date Gertrude Ostrom requested Kunz to cash the same, which he did, and she received in money the amount of the check.

5. That on August 22, 1931, Grunska commenced an attachment suit for the sum of $406.30 against Gertrude Ostrom before George E. Arthur, a police magistrate with office in the Village of Glen Ellyn, Du Page county, Illinois; that complainant was named in the attachment suit as garnishee and was duly served as such on August 22, 1931; and that the service was made upon its agent in charge of its office at Downers Grove, Illinois,—said office being the only one retained by it in Du Page county.

6. That Grunska also notified complainant at its office at No. 1200 North Ashland avenue, Chicago, of the service of the writ upon it as garnishee, and that the money on the policies should not be paid until the disposition of the attachment suit.

7. That thereafter complainant filed its answer as garnishee in the suit pending before said police magistrate, in which it stated that "it had sufficient money in its hands belonging to Gertrude Ostrom with which to satisfy the claim of Grunska"; and that the attachment writ was served upon complainant "at least three (3) days before the delivery of said check to Gertrude Ostrom."

8. That thereafter such proceedings were had in the attachment suit that on October 3, 1931, a judgment was rendered against Gertrude Ostrom for $381.50,

and costs of suit amounting to $15.85, which judgment is still in full force and effect and not appealed from, but that the garnishment proceeding against complainant is still pending and undetermined.

9. That payment upon the check of $1,424.27, so delivered to Kunz, "was stopped by complainant," and it remains unpaid and is now the property and in the possession of Kunz, "who claims the amount by reason of having cashed the check and advanced his money to Gertrude Ostrom."

10. That complainant, "in accordance with an Interlocutory Decree heretofore entered in this cause," has deposited with the clerk of this court the sum of $1,400.11, "being the amount of the check so delivered to Gertrude Ostrom, *less its costs in this suit.*"

And the court in the final decree ordered and adjudged in substance as follows:

That all findings of fact made in said interlocutory decree, which are *inconsistent* with the findings herein, are hereby *changed and modified* to conform to the findings herein, "which are found to be the facts as shown by the evidence in this cause"; and that the interlocutory decree is further changed and modified in this respect, viz., "that complainant herein, Prudential Insurance Company of America, *is not released, discharged and acquitted* from *further liability* on account of the deposit with the clerk of this court of said sum of $1,400.11."

That the fees of the master, to whom this cause was referred, are hereby approved in the sum of $78.85, as shown by the schedule attached to his report, and the same are hereby taxed as costs in this cause; and that from the funds so deposited with the clerk of this court, said clerk is hereby directed to pay to the master said sum of $78.85 in full payment of his fees.

That from the amount so deposited with the clerk, Grunska is entitled to the sum of $397.65, together with the sum of $5 for his costs in this cause, or a total

of $402.65, and the clerk "is hereby ordered and directed to pay to Grunska said sum of $402.65."

That the defendant, Kunz, "is entitled *to the balance of said fund,* remaining in the hands of the clerk *after the payments herein provided for,*—being the amount of $918.61, *to be applied upon the check* of said complainant Insurance Company hereinbefore described"; and that the clerk "is hereby ordered and directed to pay to Kunz said sum of $918.61."

That that part of the interlocutory decree (viz., that the payment of the sum of $1,400.11 by complainant to the clerk of this court shall constitute full satisfaction of all claims and demands of all defendants herein, and by such payment the complainant Insurance Company, its successors and assigns, are forever released, acquitted and discharged of and from any and all further liability to the defendants, Gertrude Ostrom, said Kunz and said Grunska, and their executors, administrators, successors and assigns, for and on account of the making, issuance and delivery and existence of said policies of insurance, and said proceeds thereof represented by said check issued to the order of Gertrude Ostrom by said complainant Insurance Company) "be and the same is hereby changed, modified and altered as to said Kunz *in this,* that this decree *shall not operate as a bar to any action* hereafter brought by said Kunz, or the legal holder and owner of said check of complainant Insurance Company, issued to said Gertrude Ostrom in the sum of $1,424.27, *for any sums remaining unpaid thereon, nor shall this decree be a bar to any action* which may be brought by the legal owner or holder of said check *for damages by reason of the wrongful execution and delivery thereof and the refusal to pay the same.*"

That the order heretofore entered, and contained in the interlocutory decree, enjoining defendants, their agents, etc., from bringing or prosecuting any suit at law or in equity in any jurisdiction against the com-

plainant Insurance Company because of the issuance of said check *be set aside* as to any right of action of the defendant, Kunz, in respect to *any balance* that may be due to him on account of the failure or refusal to pay said check.

In complainant's bill, after stating various facts in substantial accord with those as found by the court as above stated, it alleged that it has always been willing to pay the amount of the face of said check, less the court costs incurred in bringing this interpleader suit, to such person or persons as may lawfully be entitled to receive the same and to whom complainant can with safety pay the same, and complainant hereby offers to bring said amount, less said costs, into court, etc.; that the nature of its business requires it to do business through widely scattered offices in many cities and towns, each being under separate management, and that, hence, it is impossible for it to be apprised immediately of transactions taking place in its various offices, etc.; and that it does not collude in any respect with any of the defendants, and has not filed the present bill at the request of any of the defendants, but has done so of its own volition and to prevent it from being harassed and sued as regards the matters alleged, etc. The prayer of the bill is similar to that usual in an interpleader bill, and, in addition, there is a prayer for a temporary injunction against Grunska, his agents, etc., enjoining him from the further prosecution of the attachment suit, and for a temporary injunction against all defendants, etc. On October 21, 1931, a temporary injunction was issued.

To the bill Grunska and Kunz filed separate answers, and complainant filed replications thereto. In Kunz's answer, filed December 4, 1931, after stating the issuance of the policies, the death of Benjamin Ostrom, the issuance by complainant of the check for

$1,424.27, and its delivery to Gertrude Ostrom, he alleged that he upon request cashed the check and delivered the proceeds to her "without knowledge on his part, or that of his agents, of the pendency of said attachment suit against her"; that he presented the check for payment at the bank upon which it was drawn, but that payment was refused; that the check was returned to him marked "payment stopped"; that he now holds the same unpaid, as a bona fide holder for value; and that the face amount of the check should be paid to him. He denied that the fund proposed to be deposited in court by complainant should be subject to any court costs incurred by the bringing of this interpleader suit, or that complainant was entitled to the relief as prayed in its bill.

On October 4, 1932, on motion of complainant, the court entered a so-called "interlocutory decree" (mentioned in said final decree), in which the court, after making certain findings based upon the pleadings and the statements of opposing counsel made in open court, ordered and adjudged (a) that this bill of interpleader "is properly filed"; (b) that complainant pay to the clerk of the court the proceeds of the policies amounting to $1,424.27, less the costs incurred by it of $24.16, "leaving the net amount so to be paid of $1,400.11, which shall remain to the credit of this action and abide the further order of the court"; (c) that, it appearing that complainant has paid said net amount to the clerk "said payment shall and does constitute full satisfaction of all claims and demands of all defendants against complainant for or on account of said policies (giving the numbers) *and said check* issued to the order of Gertrude Ostrom," and that complainant is "forever released, acquitted and discharged of and from any and all further liability to the defendants, Gertrude Ostrom, Kunz and Grunska"; (d) that, it appearing that Gertrude Ostrom is not

claiming the proceeds of the fund so deposited and is not, therefore, now a necessary party defendant to this suit, she "is hereby dismissed as party defendant to this interpleader"; (e) that the defendant (Kunz), having possession of said check, produce it and deliver it to complainant for cancellation; (f) that the remaining defendants (Kunz and Grunska), their agents, etc., "are hereby *perpetually and permanently* enjoined from bringing or prosecuting any suit or suits at law or equity" against complainant Insurance Company "for or on account of its making or issuing said check"; (g) that the defendant, Grunska, his agents, etc., "are hereby *perpetually and permanently* enjoined from proceeding with or taking any steps whatsoever with said attachment suit naming complainant as garnishee," etc.; (h) that "jurisdiction by this court is retained over the balance of said fund," remaining on deposit with the clerk of this court, and "over the remaining parties defendant," until further order, "concerning the interpleader issues between said defendants, Kunz and Grunska"; and (i) that complainant is hereby dismissed out of this cause after and upon the entry of this interlocutory decree and it is expressly excused from further attendance upon the trial.

Two days thereafter, on October 6, 1932, the defendant Kunz, by his solicitors, appeared and moved (1) that the court "vacate and set aside said interlocutory decree" and (2) that the cause be referred to a master "upon the question as to whether or not the defendants *shall be compelled to interplead herein.*" After arguments heard the court denied *both* motions, and thereupon both Kunz and Grunska, by their respective solicitors, joined in a motion for a reference of the cause *generally* to a master. This motion the court granted, and ordered that the master take testimony and "file his report covering the tes-

timony, together with his conclusions of fact and law, within 60 days.''

On December 9, 1932, the master's report (dated November 26, 1932) was filed. It appears from the report that on the hearings only the defendants, Kunz and Grunska, appeared by their respective solicitors; that certain oral and documentary evidence was introduced on behalf of each defendant, which had reference solely to their respective claims to the said fund, deposited with the clerk of the court; and that upon the submission of the report Kunz alone filed objections, which were overruled. In the report, after making numerous findings (substantially the same as found by the court in said final decree as above set forth), the master stated that, as he understood the order of reference, he was to report only ''as to the disposition of said fund'' of $1,400.11, so deposited: and the master concluded as follows:

''Under all the evidence in this cause, I have no alternative but to find that there should be paid to Edward J. Grunska the sum of $381.50 and $15.85 as costs, or a total of $397.35, and that *the remainder of said fund be paid to Charles R. Kunz*. That out of said fund should first be paid the costs and expenses of this proceeding, including the master's and stenographer's fees upon this reference to be taxed as a part of the costs of this suit.''

By order of court the objections of said Kunz to the master's report were ordered to stand as exceptions, and, after a hearing, the court overruled the exceptions and entered the final decree appealed from as above mentioned.

In 4 Pomeroy's Equity Jurisprudence (4th Ed.) p. 3172, sec. 1322, it is said that the equitable remedy of interpleader ''depends upon and requires the existence of the four following elements, which may be regarded as its essential conditions: 1. The same thing,

debt or duty must be claimed by both or all the parties against whom the relief is demanded; 2. All their adverse titles or claims must be dependent, or be derived from a common source; 3. The person asking the relief—the plaintiff—must not have nor claim any interest in the subject matter; 4. He must have incurred *no independent liability to either of the claimants;* that is, he must stand perfectly indifferent between them, in the position *merely of a stakeholder."*

This statement of the law is quoted with approval in the following adjudicated cases in this State, viz.: *Platte Valley State Bank v. National Live Stock Bank,* 155 Ill. 250, 257; *Morrill v. Manhattan Life Ins. Co.,* 183 Ill. 260, 267; *Heinrich v. Harrigan,* 179 Ill. App. 199, 202. In discussing said fourth element the author (Pomeroy) further says (p. 3178, sec. 1326; italics ours):

"Such an independent liability may be incurred in two classes of cases: 1. In the first place, the agent, depositary, bailee, or other party demanding an interpleader, in his dealings with one of the claimants, may have expressly acknowledged the latter's title, or *may have bound himself by contract,* so as to render himself *liable* upon such *independent undertaking,* without reference to his possible liability to the rival claimant upon the general nature of the entire transaction. Under these circumstances, *as the plaintiff is liable at all events to one of the defendants,* whatever may be their own respective claims upon the subject-matter as between themselves, he cannot call upon these defendants to interplead. He does not stand indifferent between the claimants, since one of them has a valid legal demand against him at all events. Even if the acknowledgment or promise has been obtained by fraud or mistake the right of the party thus deceived to be relieved in equity from his liability *cannot be considered and sustained in an interpleader suit.* 2. In the

second class of cases, the independent liability of the plaintiff to one of the defendants arises from the very nature of the original relation subsisting between them, without reference to any collateral acknowledgment of title, or promise to be bound."

In a note under said section it is further stated (p. 3179):

"Another instance of the doctrine is, where the plaintiff, in stating the case in his bill, is obliged to admit himself *to be a wrong-doer* to either one of the defendants; he thus shows an independent liability to that defendant, and is not entitled to an interpleader. (Citing cases.) If the liability has been occasioned *by some act of the plaintiff himself,* he is not entitled to the remedy." . (Citing cases.)

In the present case, as appears from the pleadings, the court's findings and the evidence introduced before the master, the salient facts are: (1) Because of the policies issued by the complainant insurance company and of the death of the insured, the company became admittedly indebted to Gertrude Ostrom, the beneficiary named in the policies, in the sum of $1,424.27; (2) on August 22, 1931, while the company was so indebted, Grunska, a bona fide creditor of Mrs. Ostrom, commenced an attachment suit against her in said police magistrate's court and on the same day caused the company to be served as garnishee; (3) *three days later,* on August 25, 1931, an agent of the company (presumably not having knowledge of the service of such garnishment writ) caused to be delivered to Mrs. Ostrom its check, payable to her order, for $1,424.27, in payment of its indebtedness on said policies; (4) shortly thereafter she indorsed the check and, *at the request of said agent of the company,* Kunz cashed the check and Mrs. Ostrom received the money and Kunz deposited the check for collection in his bank; (5) shortly thereafter, notwithstanding the fact that

Kunz was and is a bona fide holder of said check for value, the company *wrongfully* stopped payment of the check and it has not been paid; (6) thereafter, on October 3, 1931, Grunska obtained a judgment in said attachment suit against Mrs. Ostrom for $381.50 and costs; (7) thereafter on October 10, 1931, the insurance company filed its answer as garnishee in said suit alleging (a) that "it holds a sum of money sufficient to pay the judgment entered against defendant" (Mrs. Ostrom) and (b) that "said sum is also claimed by said Kunz"; and (8) that on October 14, 1931, the insurance company filed its present bill of interpleader.

The main contention of counsel for appellant, Kunz, is that the circuit court erred in entering the final decree appealed from. And counsel argue that neither the pleadings nor the evidence disclose such a state of facts as warrants the court in decreeing that the defendants (Kunz and Grunska) interplead, because (1) the complainant insurance company has incurred independent legal liabilities to each of the two defendants (to Grunska because of its answer as garnishee in said attachment suit, and to Kunz because of his possession as a bona fide holder for value of the company's check of $1,424.27); (2) complainant is not merely a stakeholder but is itself interested in the result of the interpleader suit, and (3) complainant is also a wrongdoer in that it unlawfully stopped payment of its check of $1,424.27. After considering the principles and rules of law as above stated, and the facts as shown, we are of the opinion that there is substantial merit in the contentions and argument of counsel. (See, also, *Mitchell v. Northwestern Mfg. & Car Co.,* 26 Ill. App. 295; *Rauch v. Fort Dearborn Nat. Bank,* 223 Ill. 507.) Accordingly, the decree of the circuit court of February 15, 1933, appealed from,

is reversed and the cause is remanded with directions to the circuit court to dismiss complainant's bill for want of equity.

*Reversed and remanded with directions.*

SULLIVAN, P. J., and SCANLAN, J., concur.